## MAXWELL ET AL. V. DELL.

Where a third person agreed to pay the debt of another, after attachment proceedings had been instituted against the debtor, but before levy, and the attachment suit was dismissed, but no agreement made to forbear further prosecution of proceedings to collect the debt, it was a promise without consideration, and also void, not being in writing.

*Appeal from County Court of Boulder County.*

THIS action was commenced before a justice of the peace in Boulder county by Moore & Dell, partners, against Clinton M. Tyler. It was appealed from there to the county court of Boulder county, and from thence to this court. Since the appeal to this court, Moore, one of the plaintiffs, and Tyler, the defendant, have died. The executors of the latter, who was appellant, have

been substituted as parties in his stead, and Dell, as surviving partner of the firm of Moore & Dell, has been substituted in place of Moore & Dell, who were appellees. The action is based on an alleged verbal promise of Tyler to pay an indebtedness of one Huggins to Moore & Dell, for $164.82, created before such promise was made by Tyler. Moore & Dell sued Huggins by attachment before a justice of the peace to recover said indebtedness. This was in September, 1882. Huggins was then the owner of a threshing-machine, and was threshing with it at Tyler's place. The constable to whom the attachment writ was delivered for execution went to Tyler's place to levy on the machine. Flansburgh, an agent of Moore & Dell, went with him. When they arrived there Huggins was away, but his machine and men were still there threshing for Tyler. Flansburgh, in his testimony, says: "We went past Tyler's house some ways, where the machine was at work, and found that Huggins was not there. We started on our way back, and met Tyler near his house. We stopped, and one of us asked him where Huggins was, and when he would be back. He replied that Huggins was away looking after a job of threshing, and would perhaps be back that evening, but was not positive. I spoke in regard to the bill, and Tyler asked how much it was. The constable, Grant, took the papers out of his pocket, and figured up his costs, and told Tyler the amount,— costs and all. Tyler then said: ' You folks may give yourself no more bother in regard to the matter. I will see that that bill is paid.' Tyler further said that he was owing Huggins some, and would owe him more when he got through with his work. I then said to Grant, ' That is good enough;' and Grant said, ' Yes,' and we passed a little more conversation, and went on. We returned the papers as guarantied, dismissed the suit, and paid the costs." The testimony of the constable, Grant, was substantially the same as that of Flansburgh. Neither of these witnesses could state

positively that they, or either of them, informed Tyler of the suit against Huggins, or of the fact that they had the papers therein with them, but each seemed to be of the impression that Tyler was apprised of these facts before he made the promise to pay the bill; and the constable testifies that he thinks he said to Tyler that he had come there to levy on said machine. Grant and Flansburgh both say that Grant took the papers in the *Huggins Case* out of his pocket, in the immediate presence of Tyler — so close to him that he could hardly avoid seeing what they were — and figured the amount of the bill and costs thereon. No promise was made to Tyler to dismiss the suit against Huggins. This embraces all the material facts testified to on behalf of the plaintiffs, except that it was shown that the indebtedness of Huggins still remained unpaid. The defendant Tyler in his testimony denied that he was informed or knew that Grant was a constable, or that a suit had been instituted against Huggins, and says that he did not recognize any of the papers in the hands of Grant on that occasion as a summons or writ of attachment against Huggins, and that he had no knowledge or information whatever of any intent on the part of Grant to make a levy on said machine or other property; denies that he made any promise to Grant and Flansburgh, or either of them, to pay said indebtedness, or that he would see it paid, and says that if he made any promise at all in reference thereto it was only to the effect that he would see Huggins, and urge him to pay the bill, and that he thought Huggins would pay it. He further testifies that a levy upon said machine on that occasion " would not have inconvenienced him in the least, as it was doing a bad job, and he wanted it to quit." The evidence further shows that no levy was made on the machine or other property of Huggins by virtue of the writ of attachment issued in the suit of Moore & Dell against Huggins, and that the papers in said suit were returned " Not served."

Mr. RICHARD H. WHITELEY, for appellants.

Mr. JOHN H. WELLS, for appellee.

DE FRANCE, C.   Conceding the facts as testified to on behalf of the plaintiffs, Moore & Dell, they do not establish any liability upon the part of Tyler to pay the debt sued for.   The promise made by Tyler is a promise without consideration, and is not enforceable for that reason.   If it were supported by a consideration, still it would be but a special promise to pay the debt of another.   Such a promise must be made in writing in order to bind the promisor.   The facts of this case, conceding a consideration for the promise, do not bring it within that class of cases contemplated in the authorities cited by counsel for appellee.   It is unnecessary to enter upon a discussion of the principles enunciated in the many and somewhat conflicting authorities as to what promises are or are not within the statute; for we regard the promise here involved as a mere naked promise, not enforceable even were it in writing.   It appears from the testimony of the constable and Flansburgh that they had started on their way back, without making a levy, before they saw Tyler.   No promise of forbearance to Huggins, or to dismiss the suit against him, was made.   Tyler testified that a levy upon the machine at that time would not have harmed him, and this stands uncontradicted.   No lien was waived, for none existed.   An attachment writ, unlike an execution in this respect, does not become a lien until a valid levy is made thereunder.   Considering these as well as all the other facts in the case, we fail to discover any consideration for the promise upon which this action is founded.   The judgment should be reversed.

RISING and STALLCUP, CC., concur.

PER CURIAM.   For the reasons stated in the foregoing opinion the judgment is reversed and the cause remanded.                                    *Reversed.*